The next case called, excuse me, for argument, People v. Gary. Counsel. Good afternoon. Good afternoon. May it please the court, Alexander Munches with the office of the state health defender representing Mr. Brian A. Gary. Although this case presents an issue of first impression, this court needs to address a single, simple question. Did Mr. Gary receive proper Miranda warnings? Miranda's second warning was the only one at issue. Normally, suspects are told, anything you say may be used against you in court. The U.S. Supreme Court has said there is no qualification for this broad and explicit warning. Here, the detectives told Mr. Gary, anything you say can and may be used against you in court or courts, with the offense or offenses by which this warning is executed. The core problem here is that the Granite City detectives, in the waiver form they used, both qualified and narrow Miranda's second warning by appending the language for the offense or offenses by which this warning is executed. This warning gave Mr. Gary the false confidence that his statements could be used against him in a narrow way only. For the particular offenses, the Granite City detectives explicitly stated they were investigating. This warning implied that Mr. Gary could speak with immunity about an offense, as long as the detectives had not previously revealed they were investigating it. In the briefing, we draw an analogy to an 11th Circuit case. There, the investigating officer told the suspect that, quote, honesty wouldn't hurt him. The 11th Circuit held that that language contradicted Miranda's second warning. Similarly here, the defective warning contradicted narrow and qualified Miranda's second warning. Therefore, as a matter of law, the defective warning Mr. Gary received included a knowing and intelligent waiver. Moreover, Your Honors, the record bears out his legal conclusion. On January 8th, Granite City officers responded to a report of domestic disturbance. They arrested Mr. Gary at the scene. A day later, they interrogated Mr. Gary. In particular, Detective Parkinson interrogated Mr. Gary about a possible burglary. Three days after that, Detective Parkinson again interrogated Mr. Gary, first about a burglary, then about a murder. Mr. Gary was led to believe the detectives were there to investigate a burglary. He suspected they may want to investigate more and asked, several different times, what's this all leading to? Mr. Gary clearly expressed confusion after receiving the defective warnings. Moreover, his questions went to the heart of the present issue of appeal, his knowledge of the nature of his constitutional right against self-incrimination and the consequence of banning him. In response, Detective Parkinson placated Mr. Gary. He said, I'm not trying to jam you up on a whole lot of things here. We're investigating burglaries and things like that. No officer at any time had properly warned Mr. Gary, so it's problematic that he spoke at all. Without a valid waiver at the outset, all of his subsequent statements were compelled. To put it in the language of Miranda, he was unaware that he was faced with a phase of the adversary system, that he was not in the presence of persons acting solely in his interest. The subsequent interrogation had the effect of exploiting his ignorance. Instead of proper Miranda warnings, he received an emotionally manipulative and forceful moral argument as to why he should confess. Parkinson said, get right with God, you know what I'm saying? And you know what I'm talking about, because your mom raised you right when you were a young man. She took you to church every Sunday. In sum, Mr. Gary never received proper Miranda warnings, and thus the state never obtained a valid waiver. The warning Mr. Gary received subverted the very privilege it should have explained, did not reasonably convey to him his rights as required by Miranda and his project. The state's argument on appeal is easily distinguished on this basis. Mr. Gary never received proper Miranda warnings. Accordingly, this court should reverse the trial court, suppress his statements, and order a new trial. Are there no further questions? I don't believe so. Thank you. Counsel? May it please the court. Counsel, Whitney Atkins for the state of Illinois. The crux of the defendant's argument is the proposition that any time Miranda warnings are narrowed, they are inadequate, and the resulting incriminating statements should be thrown out. But the exact language in the Miranda opinion is not some magic wand that requires strict compliance. Miranda warnings are prophylactic. They are not themselves rights protected by the Constitution. They are measures to protect a defendant from compulsory self-incrimination. And here, the defendant was informed of the critical principles in Miranda. He was told that anything he said would be used against him for the offenses by which the warning was executed. And they were. The offenses that were being executed were burglary and murder. The defendant was interrogated for burglary and murder. And then he made incriminating statements. And those incriminating statements were subsequently used against him in prosecuting him for murder and burglary. So the warnings that he received were congruent with the offenses by which the warning was executed for. So the admonishments were reflective of the principles of Miranda. Now, the defendant replies that the warnings implied that he could speak about an offense as long as the detectives did not explicitly state that they were investigating an offense, the offense. But the detectives were silent as to what they were investigating. So the logical conclusion of the defendant's argument is that the defendant had no idea, that the defendant did not believe that any of the statements he made could be used against him. Which is just preposterous because not just once, but twice, the defendant invoked his Fifth Amendment privilege. He obviously understood the consequences of his statements. The argument is just, you know, it's generally against reason. The defendant couldn't have believed that after being questioned about murder and burglary, and then incriminating himself in those offenses, none of that could be used against him at trial. There were no implications that the defendant could incriminate himself as long as the detectives did not explicitly state what they were investigating. The plain, clear meaning of the warning was that the officers, any incriminating statements the defendant made could be used against him in the offenses by which the warning was executed. There is no implication or express statement about what the detectives explicitly state. So while the warnings were narrower than the exact language in Miranda, they still adequately warned the defendant of the consequences of his self-incrimination. So with those reasons, the people urge this court to affirm the judgment below. Thank you, Counsel. Counsel? Just four quick points. Our argument on appeal is that the officers failed to reasonably convey Miranda's second warning. We've not argued that the exact language of Miranda is a magic wand that must be reiterated, prevailed, nor would we have made that argument. Second of all, the State has apparently taken two different positions on what occurred during the interrogation. In briefing, they say that the officers never explained what they were investigating. At oral argument twice today, the State has said that the officers explained that they were investigating both a burglary and a murder. Given this sort of factual confusion, I suggest this court look to the fact section of the opening brief as well as view the videotape for themselves. But I submit to you that the fact section of the opening brief is the accurate account of what occurred. Finally, the plain language of the warning itself is the best indication of what the warning means. The State has argued that our interpretation is against reason. In briefing, it said simply that this additional language was merely surplusage. The State hasn't offered, actually, contextual argument or case citation in support of its reading. The State has submitted, as a fourth point, that this particular warning was narrower than Miranda's language. The State says, well, there's no big deal that it was narrower, but we submit that it was a big deal. This warning did not reasonably convey to Mr. Gaird the nature of his constitutional right and the consequence of abandoning it. Accordingly, this court should reverse the trial court, order a new trial. Are there no other questions? I don't believe there are. Thank you, Counsel. We appreciate the briefs and arguments of counsel, and we will take the case under advisement.